IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
June 20, 2006 Session

## STATE OF TENNESSEE v. DAVID MARSH

**Direct Appeal from the Circuit Court for Rutherford County**
**No. F-57019B     Don R. Ash, Judge**

<hr>

**No. M2005-02879-CCA-R3-CD - Filed December 13, 2006**

<hr>

Following a jury trial, Defendant, David Marsh, was convicted of two counts of forgery and sentenced to serve three years in the Department of Correction for each offense, to be served concurrently, for an effective sentence of three years. On appeal, Defendant argues that the evidence was insufficient to sustain his convictions for forgery. After a thorough review, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3, Appeal as of Right; Judgments of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID G. HAYES and NORMA MCGEE OGLE, JJ., joined.

R. Timothy Hogan, Murfreesboro, Tennessee, for the appellant, David Marsh.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; and Jude Santana, Assistant District Attorney General, for the appellee, the State of Tennessee.

### OPINION

One morning in April 2005, Carlos Gordon was at the Nashville Rescue Mission when Defendant approached him and asked him if he wanted to "make some money." Defendant requested that Mr. Gordon "help him out" by opening up a checking account in his name. Mr. Gordon agreed to open the account because he needed the money. He left the mission with Defendant in a car driven by Defendant's sister. Defendant and his sister took Mr. Gordon to several banks before Mr. Gordon finally received approval to open a checking account at Cavalry Bank in Rutherford County.

Defendant's sister and mother provided Mr. Gordon with money to use in opening the account. The checks were written in the amounts of $50.00, $75.00, and $100.00. Defendant's sister "filled out" the checks to Mr. Gordon in the presence of Defendant and his mother. Mr. Gordon

personally signed the checks in the presence of these individuals before giving them to the bank teller for deposit into his new account.

At trial, Mr. Gordon identified a check paid to his order in the amount of $695.18 with a notation that the check was a "car payment." He cashed the check at a different Cavalry Bank location than where he opened his checking account. He identified a second check paid to his order in the amount of $650.00 with a notation that the check was for "rent." With Defendant's assistance, this check was also cashed at a different Cavalry Bank location. After cashing the two checks, Mr. Gordon gave the money to Defendant. Defendant gave Mr. Gordon $75.00 in exchange for opening the checking account. Defendant and his sister then went shopping and bought food, a television, a radio, and "a whole bunch of other stuff." Mr. Gordon and Defendant were arrested when they attempted to cash a third check at yet another Cavalry Bank location.

Both the "rent" check and the "car payment" check were from an account in the name of Tyree Lavender. Tyree Lavender testified that he never possessed a checking account with the account information contained on the "rent" and "car payment" checks. The address was not his current address nor was the telephone number. He said that it was not his signature on the checks. Mr. Lavender did not know Mr. Gordon or Defendant, and he had no reason to write Mr. Gordon a check for rent or for a car payment.

Cathy Sullivan testified that on April 14, 2005, Defendant and Mr. Gordon came into the Cavalry Bank on Lowery Street in Smyrna where she was working as a teller. Defendant accompanied Mr. Gordon to the teller window. Mr. Gordon, an account holder, then negotiated a check in the amount of $695.18. The check was drawn on the account of Tyree Lavender. Ms. Sullivan credited $200.00 dollars to Mr. Gordon's checking account, and she gave Mr. Gordon the remaining amount in cash after verifying his identity.

Crystal Molina, a teller from another Cavalry Bank location in Smyrna, testified that on April 14, 2005, Mr. Gordon came through the bank's drive-thru window. He was driving a car with three passengers. Defendant was riding in the passenger seat. Mr. Gordon cashed a check paid to his order in the amount of $650.00. Ms. Molina credited approximately two hundred dollars to Mr. Gordon's account and gave him "four hundred some-odd dollars in cash."

Jamie Sweeney testified that he was the vice-president of retail banking at Cavalry Bank. Mr. Sweeney also handled some loss prevention and security work for the bank. On April 14, 2005, Ms. Sullivan called Mr. Sweeney from her location at the South Lowery Street office. She notified Mr. Sweeney that she had conducted a split deposit transaction that she felt "uneasy" about, and she wanted him to "take a look at it." Ms. Sullivan faxed Mr. Sweeney a copy of the check for $695.18 paid to the order of Mr. Gordon.

Mr. Sweeney identified the transaction as being consistent with fraud patterns the bank had observed in the past. He sent an alert to all Cavalry Bank branches along with a picture of Defendant and Mr. Gordon that was taken from surveillance cameras in the bank. Mr. Sweeney was contacted

by a bank branch in Murfreesboro and notified that Defendant and Mr. Gordon were in the branch. Mr. Sweeney dialed into the branch's security system and used surveillance cameras to identify the two men as the perpetrators. The branch triggered the alarms and called the police, and the two men were arrested for passing the forged checks.

Detective John Liehr of the Smyrna Police Department responded to the scene at the Murfreesboro Bank location where Defendant and Mr. Gordon were arrested. Detective Liehr took statements from both men. Defendant stated, "[m]e and Carlos went to Cavalry Bank in Smyrna. He asked me to go with him. He handed the check to the teller. I will help him pay the money back to the bank because I came into the bank with him because he asked me to go with him."

## II. Analysis

Defendant asserts that the evidence was insufficient to support his convictions for forgery. Specifically, he contends that the State failed to prove that Defendant possessed the checks, wrote the checks, or signed the checks. The State argues that the evidence was sufficient to show that Defendant instigated and was the leader of the forgery scheme, and therefore was sufficient to support his conviction.

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact. *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992).

In the present case, the record reflects that Defendant was convicted of forgery under a theory of criminal responsibility. A person who "forges a writing with intent to defraud or harm another" is guilty of forgery. T.C.A. § 39-14-114(a). The term "forge" includes altering, making, completing, executing or authenticating any writing so it purports to be the act of another who did not authorize that act. T.C.A. § 39-14-114(b)(1)(A)(i)-(ii); *State v. Knight*, 969 S.W.2d 939, 942 (Tenn. Crim. App. 1997). A person is "criminally responsible for an offense committed by the conduct of another if [a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." T.C.A. § 39-11-402(2). Criminal responsibility is not itself a separate crime; rather, it is "solely a theory by which the State may prove the defendant's guilt of the alleged offense . . . based upon the conduct of another person." *State v. Lemacks*, 996 S.W.2d 166, 170

(Tenn. 1999). Under a theory of criminal responsibility, a defendant's participation in the crime may be inferred by defendant's presence and companionship with the perpetrator of a felony before and after the commission of the offense. *See State v. Ball*, 973 S.W.2d 288, 293 (Tenn. Crim. App. 1998). "No particular act need be shown, and the defendant need not have played a physical role in the crime in order to be held criminally responsible for the crime." *See State v. Caldwell*, 80 S.W.3d 31, 38 (Tenn. Crim. App. 2002) (citing *Ball*, 973 S.W.2d at 293). In order to be held criminally responsible for the acts of another, the defendant need only "'associate himself with the venture, act with knowledge that the offense is to be committed, and share in the criminal intent of the principle.'" *Caldwell*, 80 S.W.3d at 38 (citing *State v. Maxey*, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994)).

In this case, the record reveals that Defendant acted with intent to "assist [in] the commission of the offense[s]" and "benefit[ed] in the proceeds or results of the offense[s]." T.C.A. § 39-11-402(2). The proof showed that Defendant approached Mr. Gordon at the rescue mission and solicited his assistance in opening a checking account in exchange for money. After agreeing to help Defendant, Mr. Gordon left the mission with Defendant and his sister and traveled to Cavalry Bank where he opened a checking account in his own name. The account was opened with money provided to Mr. Gordon by Defendant and Defendant's sister. On a subsequent day, Defendant accompanied Mr. Gordon to three separate Cavalry bank locations. At two of these bank locations, Mr. Gordon conducted transactions using forged checks signed and drawn on the account of Tyree Lavender. The checks were paid to the order of Mr. Gordon in the amounts of $695.18 and $650.00. Mr. Lavender testified that he had no knowledge of the checks or the two men who had cashed them. A bank teller testified that Defendant came to the bank with Mr. Gordon and accompanied him to the teller window where he cashed the check for $695.18. Another teller testified that Defendant was in the car with Mr. Gordon when he came through the drive-through window to cash the check in the amount of $650.00. Mr. Gordon gave the money from the cashed checks to Defendant who in turn paid Mr. Gordon $75.00 for his assistance in opening the checking account and cashing the checks. Defendant then went shopping with the money from the forged checks. Based on this evidence, a rational trier of fact could find that Defendant was guilty of forgery under a theory of criminal responsibility because he intended to defraud the bank by knowingly passing forged checks through another individual. Consequently, we conclude that the evidence was sufficient to support Defendant's convictions for forgery. Defendant is not entitled to relief in this appeal.

## CONCLUSION

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
THOMAS T. WOODALL, JUDGE